Please rise. Please sit down for the call to action stage. 1-0-9-2-3-0-6. 2-0-9-2-3-0-6. 3-0-9-2-3-0. Please sit down for the call to action stage. Please sit down for the call to action stage. There simply is just no support for that position. Beyond that, if this Court were to say that that is the requirement for the Petitioner to come back where he was injured to take a position of employment, it's our position that that position that they offered him of the administrative assistant was not suitable employment. It wasn't suitable employment because this gentleman wasn't qualified for a clerical position. He didn't have any computer skills, didn't have any Microsoft training, any Excel spreadsheet training, any PowerPoint experience. In fact, he had very little experience with customers other than delivering the jugs of water to the residential  Petitioner's expert, Susan Ettenberg, said there's no way this gentleman is qualified to work for that position. He could work in some sort of customer service line of work, might work as an order clerk, but certainly he wouldn't be able to take this administrative position within Peerier and work in the office. This is a ---- Do we have conflicting evidence on that, on whether or not the position was a legitimate offer? I mean, you have Ettenberg on behalf of the claimant, and then you have this Bridget Nowak. Correct. And here we have conflicting evidence between the two vocational experts, absolutely. When we look at the testimony, though, of Bridget Nowak, which the Commission found to be more credible than Petitioner's vocational expert, what's glaring about Nowak's testimony is she never met nor did she ever talk to Gary Jones. And that's important because this gentleman is inarticulate. I point to page 253 of the record, the testimony of Susan Ettenberg. She did interview Gary Jones. She did meet with him. She did discuss and interview his prat, his past job history. And this is not a gentleman that was articulate by any means, nor had he ever worked in an office environment. Can I ask you a question? Did the arbitrator see Mr. Jones? Yes. Well, he knew this. Correct. And so? He makes no comment as to his articulation in the decision. You know, it seems to me that what you're asking us to do is reweigh the evidence of Ettenberg versus Nowak. No, no. In fact, I'm willing to concede, as unreasonable as it seems to me, that he has to come back from Arizona with his family and come back to Illinois and take this job. I'm willing to concede that Bridget Nowak was more persuasive to the trier fact that this job was something he was capable and suitable to do and should have taken that position. Let me, for argument's sake, acquiesce on that. The problem is, even if he has to come back to Illinois, and even if he has to take the administrative position, there is absolutely no support in the record that this job pays $950 a week. When we look at the evidence, Susan Ettenberg, petitioner's vocational expert, said this job for an administrative position in Arizona would pay about $485 a week. In Chicago, it pays about $535 a week. Bridget Nowak, she testifies that, this is on page 580 of the transcript, the median annual earnings for a customer service rep, according to the Department of Labor, this is across the country, is $504.62. So you're saying the $49.5 had to be a sham based on It's a sham. It's illusory. And in fact, when I challenge Bridget Nowak on where is the evidence to support the position that this job would have earned him $950 a week, page 591 of the transcript, she admits, I have nothing to support that. I don't have a document from the Department of Labor. She's already told us it pays $504 a week. Nothing close to the $950 that they offered a man. Entry-level position for a clerical position for this gentleman. He is not going to be jumping on a board making a premium salary rate or a premium hourly rate. This is so far from what the national averages are, we can see clearly what the respondent was trying to do. I think they offered it to him to reduce their exposure on the wage differential. They know they're going to pay him a wage differential. He's not going back to lift these jugs of water and deliver it to customer routes. So they offer him a position, suitable or unsuitable, we can leave that to the commission and the panel. But even if it was suitable, it doesn't pay that rate. And he, at any of these figures, at $485, at $535, or even at what Nowak testified, $504 a week, all would entitle him to the maximum wage differential. Was that argument made before the arbitrator? I'm sorry? Was that argument made before the arbitrator? Absolutely. Made before the arbitrator, made before the commission, made at every level here. There was no question they offered him the $49,000, is there? There was no question they actually offered it to him. None whatsoever. In June of 2003, they offered him. He discussed it with his physician and his family. It's just an inflated rate. It's an artificially high salary for someone who's never worked in that field. Twenty years, he goes, when he's 20 years old, he goes to work for Perrier doing deliveries. Prior to that, he had worked as a cook, he had worked as a waiter, and he had worked as a grocery store clerk. This gentleman had never worked in the office with computers and spreadsheets, never had any clerical skills to speak of, period. Beyond that, we have no evidence under any expert's compensation for someone with that experience entering into that clerical position. So with respect to the wage differential, I think the arbitrator and the commission missed it altogether. It is against the manifest weight of the evidence, since there is no testimony regarding that artificially inflated rate. Procedurally, the argument I've made here, it's a real travesty what the arbitrator did here. The case was tried, Petitioner's case was completed, prior to which the evidence deposition of our vocational expert was taken. Put the testimony in, concluded my case in chief, and at that point, Respondent requested a continuance and a bifurcation. Interestingly, they requested bifurcation to get an IME. It's a gear violation. A trial had already started. In fact, Petitioner's case in chief had already concluded. After that, after they've seen the whites of our eyes, after they've seen our cards on the table and heard the testimony, they want to do discovery and conduct a section 12 examination. Can I ask you a question? What did Tellis testify to? Tellis testified that this gentleman works for Circuit City and he lifts TVs. And because he can lift TVs, he's got no restrictions. He's good to go back to work full duty. Well, can I ask you a question? Did they award your client a wage differential? Yes. Well, they obviously didn't accept Tellis' testimony. Well, I don't think so. Now you've got a situation where, should the arbitrator have done what he did? Probably not. But the fact of the matter is, nobody accepted Tellis' testimony. They gave your client a wage differential. He cannot have performed his usual occupation. So the question becomes, how are you harmed by it? Well, 7-month delay. I know you don't like what they did. 7-month delay is the first answer to that. Well, yes, but we can't give you any relief for that. We can tell the commission they're bad people. I mean, you've got to suffer a prejudice for us to correct it. So, you know, should the arbitrator have done what he did? Not under Section 12. He shouldn't have done it. Agreed. Had they accepted Tellis' testimony and found that you weren't entitled to a wage differential, you'd have an appealable issue. But they gave you a wage differential so they rejected Tellis. But they didn't give the max wage differential. Well, the max has nothing to do with it. That's your argument on whether 49,000 was a sham or not. It has nothing to do with them letting Tellis in. Well, I think when you have the orthopedic physician for Respondent testifying that this gentleman isn't injured, he doesn't have permanent sedentary work restrictions, despite the obvious evidence from Dr. Graves, I think that undermines the arbitrator's analysis regarding whether he's entitled to the full boat wage differential or something short of it. Let's remember something. Two of the commissioners that denied him or that gave him a wage differential calculated on 49,000 were Piggott and DeLuna. They're not exactly Respondent-oriented commissioners. Sure. So, you know, how did you suffer? What was your prejudice? What was your prejudice from letting the Tellis exam and the deposition being taken? You better stay there or they're not going to record you. Go on. Beyond the seven months, the prejudice is Respondent asks for a continuance for Section 12 IME. What do they come back with at trial? They come back with the vocational report from Bridget Nowak. They didn't ask for that. That wasn't the basis for the bifurcation and the continuance by the arbitrator. They asked for one thing and they substituted it with the testimony of Bridget Nowak. The prejudice is they knew we had a vocational expert to testify on the case. We had done the evidence deposition before we went to trial. So they asked for a Section 12 medical exam, but they come back with the medical exam and a vocational expert's report. That's the prejudice. That should have been done before trial. That wasn't the relief asked for or the basis for the request for the continuance. That came up afterwards. Did you move to strike Nowak? Absolutely. Opinion because of that? I objected to the bifurcation. No, no. I understand you objected to the bifurcation. I asked you if you moved to strike Nowak's report because the bifurcation request was a sham. I brought a motion to that effect. I brought a formal motion when the arbitrator denied it orally. The formal motion is contained in the record. And what does it say? Basically that I was prejudiced because it was not disclosed before trial that they asked for a bifurcation for an IME, but they came back with a vocational report. Arbitrator told me, I'm letting it go in. Respondent wants to argue, then I acquiesce to taking the deposition of the vocational expert. I objected to the hearsay nature of that report, but I lost on it going in, period. The arbitrator said it's going to go in. They got a continuance. Well, not to argue a technical point, but unlike the physician's report, does a vocational expert's report have to be tendered to opposing counsel prior to the arbitration hearing? No. That's why I lost the motion on the gear. The prejudice is you ask for an IME, you come back with a vocational expert's report after I've tried my case. That's the prejudice here. I think it's an abuse of discretion. The last point I have is with regard to the maintenance benefits. This gentleman is entitled to maintenance benefits, notwithstanding the decision by the arbitrator that he elected an AD1 remedy and wouldn't be entitled to maintenance. After he's reached MMI, he would be entitled to maintenance until he took the position of employment. The Respondent here never invoked this gentleman. They never offered him any placement. They made the one job offer, which we took issue with. But beyond that, they did nothing to rehabilitate this gentleman or provide him with any opportunity to go back to work. But your argument in this regard is based on the notion that the job offer on June 20, 2003, was a sham. Correct. If it wasn't a sham, you lose this decision. That's correct. If you find it to be a sham, he should be entitled to 17 weeks of maintenance. Okay. Thank you. Thank you, counsel. Counsel, please. May it please the Court. Counsel. My name is Matthew Gnafa. I represent the appellee in this matter, Perrier Group of America. Your Honors, the issues on appeal have been correctly decided in my client's favor by the arbitrator, a unanimous panel of commissioners, and the circuit court. The evidence in the record clearly establishes these rulings were within the manifest weight of the evidence, and this Court should likewise rule in my client's favor. To overturn these lower rulings, the manifest weight of the evidence standard requires the appellant to demonstrate that the decision of the commission is manifestly incorrect and that the opposite conclusion is clearly apparent. You know, your client says that what you did was tantamount to checking and raising in a card game. That's not fair game. He says that you asked for a continuance to get a Section 12 only as a sham so that you could go out and get NOLAC to overcome his vocational expert. And so what do you have to say about that? First of all, your Honor, I would say that that is not properly brought up because counsel did not raise that issue at the commission. He failed to present a statement of exceptions or a brief on review at the commission level, and I feel that a party's failure to present that issue in court. Well, how about just answering my question. I'll figure out whether we're going to allow waiver or not. Absolutely, your Honor. It's within the arbitrator's discretion to continue the matter. The matter was bifurcated. The trial was not completed. Opposing counsel, he says that he had completed his trial. However, it was still going on. He could have counted with additional evidence as well. There was, like he said, a long period of time between the initial hearing in February and I believe seven months later when the trial was concluded. He could have provided additional evidence, gotten an additional voc expert, gone back to his expert to further opine on the opinions that she had. There's nothing in the record indicating that it was our job to check and then raise as your Honor. Well, if this is okay, why would you ever bother to prepare your case? You might as well wait and see what the Petitioner's case is and then get a continuance and prepare your case from there. I understand, your Honor. However, we believe that we had to deal with what we had to deal with at the time. I'm not clear why we didn't get a vocational expert prior to the February hearing date. Well, or an IME, you know, right? That's absolutely correct, your Honor. What was the basis of the arbitrator's decision to allow the continuance to get the IME? I mean, what was your argument at the time? The argument was that it's in the Respondent's rights to have that IME as a part of his case, and that if he wouldn't have allowed that, that would have been an appealable issue right there, your Honor. After the Petitioner's already produced all of his evidence and rested? If the arbitrator was to close the case at that point without allowing us to proceed with a Section 12 exam, I believe so, your Honor. You don't have any obligation to prepare your case before it goes to trial? Of course, your Honor. I'm not sure of the circumstances, if that was a rushed decision, if we had only received the file a few weeks prior, but you are absolutely right, it is our obligation to prepare it for trial as much as possible. So you're just gambling you'd get a continuance? I'm sorry, your Honor? You're just gambling you'd get a continuance, because you say, oh, it's an appealable issue, but what's the standard of review? Abusive discretion, I believe. It's pretty deferential, isn't it? Correct, your Honor. However, I mean, it's the practice that many continuances are given for Section 12. I believe, I mean, correct as you are, it's not required. It seems like it's a regular practice that such continuances are given. And I know it's within the discretion of the arbitrator to allow such continuances. However, it's not guaranteed, and it could backfire. Absolutely. It's not something you can count on. There's a risk involved in that kind of practice, obviously, right? Correct, your Honor. What about this argument of a sham that he's saying, and you can, anybody can look at that and say, well, it is a sham, it isn't a sham, but he seems to be citing statistics from the Department of Labor that indicate that this job that was offered is being offered twice the value of the job. So what do you make of that? So the numbers that he's coming up with are for an entry-level position. Now, Mr. Jones had been with the company for 13 years. He had certain skills that would make him successful in this position, as Respondent's expert testified. If I may refer to some of those skills that she stated, first of all, he had above-average communication skills, according to our expert. He says he's inarticulate, but okay. Again, manifest way to the evidence, your Honor, the arbitrator found our expert to be more reliable, more credible, I should say. I'm sorry. He's got no computer skills, and he's weak on typing. So where is administrative skills in this administrative position? Our expert said that in the transportation industry, typing is not weighted heavily for such a position. She also stated that he had specific skills regarding traffic and route clerk dispatcher, which is one of the requirements of transportation industry administrative or not requirements, but something that a transportation administrative position would do. He had unique experience being a driver for 13 years or however many years he was in the Chicago area that would allow him to specifically tailor these skills to that position and make him an attractive candidate for such a position. That goes from delivering bottles of water to being almost office manager overnight. Not necessarily office manager, your Honor, but a dispatch person definitely would appreciate the skills of having been out on the job on those routes. Knowing how the job works, what the drivers need to do. At any position, your argument is it still within the Commission's promise? Absolutely, your Honor. I mean, the Commission and the arbitrator weighed both experts. They found that our expert was more credible, and they went with her opinion. In fact, the Petitioner's expert, Ms. Endenburg, testified that she did not discuss with anyone from the employer the job duties required for the Midwest administrative position, and further, she never definitively stated that Petitioner could not succeed in the position that was offered, your Honor. Your Honor. You know, like you were saying, it's within the province of the Commission to determine the credibility of the witnesses, determine the weight given to their testimony, and its determination thereof will not be set aside unless contrary to the manifest weight of the evidence. The case that counsel cites, the Reliance Elevator case, where the Commission did find that that was a shame offer, was correctly distinguished by the circuit court, and for several reasons that I'll just point out here. First of all, in that case, there was a similar light-duty position available five to six months prior to when Reliance offered it. There's no such evidence that there was an additional offer prior to when they offered Mr. Jones this position. There's evidence that, well, actually not, it's a fact that it was offered after the hearing had commenced, whereas here we offered it in June of 2003. The hearing did not begin until February of 2008, almost eight months later. There's evidence in the Reliance case that the tasks, that that quote-unquote light-duty position that was offered, were actually not within the restrictions of the Petitioner in that case. Now, regarding the failure to award maintenance benefits as proper, I believe that this was covered on my opponent's oral argument, but the Commission found entitlement to the wage differential 8D1 benefits on June 22nd when the job was offered. The Commission ruled that this offer was valid, and that benefits begin at that time. And that his ability to receive maintenance benefits were therefore terminated because the benefits of maintenance and wage differential conflict. The Commission actually stated the job Petitioner secured is almost exactly the position the Respondent had offered the Petitioner, except for hours and rate of pay. And again, the manifest weight burden requires Petitioner to demonstrate the decision of the Commission was clearly incorrect, and that the opposite conclusion was apparent. If there's no more questions, may I briefly conclude? Yes. Thank you, Counsel. Just respectfully, I request that the decision of the arbitrator, the Commission, and the Circuit Court be affirmed as the evidence clearly establishes that these decisions were within the manifest weight. Thank you. Roberto, please. Thank you. Addressing the issue of waiver, I point to the record. Section 695 is the beginning of Petitioner's statement of exceptions that was filed with the Commission, contrary to what Counsel had told you. The last page of that is out of order, and it appears on page 706 of the record. So Petitioner did file a statement of exceptions, and the arguments that are raised here are the same arguments that were raised before the arbitrator and the Commission. Statement of exceptions were filed late. Consequently, oral arguments were denied to the Petitioner. When I listened to the last statement that Counsel made regarding the Commission's decision, I think it's instructive as to how the Commission viewed the evidence here. To make the argument that Gary's position that he took at Cox Electronics, selling phone service, Internet service, and cable service, TV, and a store is the equivalent of this administrative position is absurd. He didn't have to computer enter. He didn't have to type. He didn't have to have any Excel or any spreadsheet or any Microsoft knowledge to do the position. He went into a sales position, which was similar to his delivery route sales with Perrier, to believe that this gentleman can administrative assistant from going from a delivery man without any training, without any assistance, without any education, is painfully absurd. There is just no way you can put him in that position without any job experience. And the evidence supports that. This is against the manifest weight of that evidence. The last point I want to make is, had they come to him with that offer and made that offer in the neighborhood of the North Coast, maybe he could live with the national averages, $500 a week, $550, maybe even $600 a week. Maybe that's reasonable in terms of that salary. And maybe he could live with the decision of the Commission that that was suitable work. But it's twice what the national average is. We can clearly see it's an artificially high salary to a gentleman without any experience to circumvent the obligation that they had on the wage differential. He was making close to $1,500 a week on the delivery doing the sales work. All he did was try to push it over so they minimized their exposure for his lifetime benefits. And I think it's clear to the arbitrators. I think it's clear to the Commission. I don't know why they missed it in both instances. But I think it's apparently clear to the panel today. And I ask that you reverse the decision of the Commission and find this gentleman was entitled to a maximum wage differential. Thank you. Thank you, counsel. The court will take the matter under advisement.